UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
JANETTE JOHNSON,                       )
on behalf of her minor child, M.C.J.,  )
                                       )
            Plaintiff,                 )
                                       )
         v.                            )   Civil Action No. 11-11243-JLT
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )
_____)

REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION
TO REVERSE OR REMAND COMMISSIONER'S DECISION AND
DEFENDANT'S MOTION TO AFFIRM COMMISSIONER'S DECISION
[Docket Nos. 15, 18]

April 12, 2012

Boal, M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding a child's entitlement to Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Janette Johnson ("Johnson" or "Plaintiff"), M.C.J.'s[1] mother, asserts that the Commissioner's decision that M.C.J. was not disabled – memorialized in a February 16, 2011 decision of an administrative law judge ("ALJ") – is in error [Docket No. 15], and the Commissioner, in turn,

---

[1] Pursuant to Local Rule 5.3(A)(2), minor children should only be identified by their initials.

1

has moved to affirm [Docket No. 18].[2]  For the reasons contained herein, I recommend that the District Court affirm the Commissioner's decision.

**I.    STANDARD OF REVIEW**

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence.  See 42 U.S.C. §§ 405(g) and 1383(c)(3).  Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion.  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  The Supreme Court has defined substantial evidence as "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts.  Rodriguez, 647 F.2d at 222; Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987).  A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim.  See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

---

[2]  The parties' motions have been referred to this Court for a report and recommendation. [Docket No. 12].

## II. FACTS AND PROCEDURAL HISTORY

A. Procedural History

Johnson applied for benefits for her son, M.C.J., on November 24, 2008, alleging a disability onset date of November 20, 2008.[3] (Administrative Record ("AR") 161-67). Johnson alleges that M.C.J. suffers from post-traumatic stress disorder and reactive attachment disorder. (AR 30).[4] The application was denied on January 30, 2009. (AR 66-68). Johnson filed a Request for reconsideration, which was denied on June 3, 2009. (AR 69-74). ALJ J. Alan Mackay conducted a hearing on February 7, 2011, which Johnson attended with her attorney. (AR 25-50). On February 16, 2011, the ALJ issued his decision finding M.C.J. not disabled. (AR 7-20).

The Decision Review Board selected M.C.J.'s case for review. (AR 1-3). On May 23, 2011, the Decision Review Board issued a notice stating that they were not able to complete the review during the time allowed, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3). Johnson filed this action on July 14, 2011. [Docket No. 1].

B. Background

M.C.J. was born on November 3, 2004. (AR 10). He was four years old and in preschool as of his SSI application date. (AR 10, 33, 168). He was six years old and in kindergarten when the ALJ rendered his decision. (AR 33, 168).

---

[3] The ALJ's decision states that Johnson applied for benefits on November 20, 2008. (AR 7). However, the application is dated November 24, 2008. (AR 161).

[4] Johnson also alleged disability in part due to eczema. (AR 172). The ALJ addressed M.C.J.'s eczema, but found that it was not a severe impairment. (AR 10-11). Plaintiff does not challenge this finding.

M.C.J. has been in foster care twice. (AR 302, 467). M.C.J. was first placed in foster care when he was two months old as a result of Johnson's drug use. (AR 467). M.C.J. returned to live with his mother when he was almost one year old. (Id.).

When M.C.J. was three years old, he was again placed in foster care when his mother was arrested and incarcerated. (AR 302, 467). It is likely that he was physically and sexually abused while in foster care. (Id.). M.C.J. was in foster care for six months and Johnson regained custody thereafter. (Id.)

    C.    <u>Medical And School Records</u>

In December 2008, M.C.J.'s preschool teacher, Margarita Deinstein, and a social worker, Magaly Sheromani, completed a Teacher Questionnaire. (AR 179-86). They opined that M.C.J. had "no problem" or only a "slight problem" in all activities contained within the domains of acquiring and using information, and attending and completing tasks. (AR 180-81). They noted that "with some re-direction child is able to perform according to his age. Child needs re-direction on & off but it does not appear to be a problem affecting school's performance." (AR 181). In the domain of interacting and relating with others, they reported that M.C.J. had "no problem" in twelve of the thirteen activities, with a "slight problem" in the remaining activity. (AR 182). They reported no problems in other domains. (AR 183-84). They concluded that M.C.J.'s "functioning at school is normal [and] appropriate for his age. No evidence of physical or mental impairment that affects his school performance." (AR 185).

Sheela Gurbani, M.D., a State agency pediatrician, reviewed the available evidence of record for mild eczema and behavioral problems and completed a Childhood Disability Evaluation Form on January 7, 2009. (AR 247-52). Dr. Gurbani opined that M.C.J. had "no

4

limitation" in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, caring for yourself, and health and physical well being. (AR 249-50). She also opined that M.C.J. had a "marked" limitation in interacting and relating with others. (AR 249). She noted that M.C.J. had been "benefitting from individual psychotherapy and play therapy, with most recent progress note 12/5/08 indicating continued progress–child has been opening up with therapist, exercising more impulse control, responding approp to requests and transitions, described as 'very resourceful, succeeds well at games, problem solving.'" (AR 249). She also noted that "child is not on meds and improvement is reassuring." (Id.).

M.C.J. began counseling with Phillip Speiser, Ph.D., a psychologist, in September 2008, after Johnson complained that M.C.J. had been experiencing angry outbursts and excessively fearful behavior. (AR 253, 308-09). Dr. Speiser noted that M.J.C. "presents with excessive familiarity with relative strangers, and unstable attachment to mother following 6-month separation earlier this year." (AR 308).

On September 26, 2008, Dr. Speiser conducted a mental status examination which revealed that M.C.J. was fully oriented, cooperative, and engaged with regard to age appropriate attention and affect; euthymic mood; adequate receptive and expressive language skills; normal and clearly articulated speech; coherent and appropriately conversant thought process; logical and appropriate thought content; no perceptual impairments; intact memory; average intellect; and age appropriate insight. (AR 302). Dr. Speiser diagnosed M.C.J. with "reactive attachment disorder of infancy or early childhood, disinhibited type." (Id.).

Dr. Speiser continued to treat M.C.J. without psychopharmaceuticals, through March

2009. (AR 255-74, 278-81, 286-87, 291-301). In a letter dated March 17, 2009, Dr. Speiser stated that he had treated M.C.J. for reactive attachment disorder "with similar behaviors that could also be attributed to Post Traumatic Stress Disorder." (AR 253). He also stated that M.C.J. "is impulsive, often will not listen and is difficult to manage. He shows excessive familiarity with strangers. He has recurrent violent nightmares, enuresis, and will wake at night and find ways to leave his room and wander in the shelter late at night." (Id.).

On May 7, 2009, Dr. Speiser filled out a Childhood Functional Impairment form. (AR 316-17). He noted no evidence of developmental delay. (AR 316). In the "Diagnosis" section, Dr. Speiser wrote "313.89 Reactive Attachment Disorder; rule out PTSD & ADHD." (AR 317). He noted that the reunification of M.C.J. and his mother was going "smoothly" after M.C.J. returned from foster care. (Id.). He also noted that "[M.C.J.] is doing better emotionally, much fewer nightmares - no enuresis - better listening. [M.C.J.] still has much difficulty with focus and ability to listen. This might be ADHD & needs to be monitored." (Id.). Finally, he stated that "[M.C.J.] is able to attend daycare & play appropriately. [M.C.J.] is able to perceive and comprehend tasks & commands & one step directions." (Id.).

Virginia Byrnes, M.D., a second State agency physician, reviewed the updated record and completed a Childhood Disability Evaluation Form in June 2009. (AR 318-23). Dr. Byrnes opined that M.C.J's impairment or combination of impairments was severe, but did not meet, medically equal, or functionally equal the listings. (AR 318). In so doing, she opined that M.C.J. had "less than marked" limitations in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well being. (AR 320-21). She found "no limitation" in moving about and manipulating objects and

self care. (AR 321).

M.C.J. also underwent counseling at the South Bay Mental Health Center from January 2010 through August 2010. (AR 406, 423-465). M.C.J.'s initial diagnoses included mood disorder, not otherwise specified, and anxiety disorder, not otherwise specified. (AR 423-36, 450). The diagnosis later changed to oppositional defiant disorder. (AR 437). M.C.J. was discharged from treatment because his mother "refused ongoing [treatment]." (AR 406-07). At the time of discharge, it was noted that M.C.J. was "better able to express his thoughts [and] feelings" and "better able to keep [his] hands to [him]self." (AR 406).

In November 2010, Johnson's attorney referred M.C.J. for a consultative evaluation with Susan Mascoop, Ed.D, a psychologist. (AR 466-72). Dr. Mascoop reviewed records, interviewed Johnson and M.C.J. and administered tests to M.C.J. (AR 466). In her report, Dr. Mascoop described M.C.J. as follows:

> [M.C.J.] was pleasant, cooperative and, initially, somewhat shy. He became more relaxed and responsive during testing. Speech was articulate, fluent, and well-modulated. Comprehension of questions and test instructions was good. He appeared to enjoy the one to one interaction in the meeting. He applied a good level of effort on each test he was given and did not give up when items were too difficult. He did look slightly bored during a picture vocabulary test as evidenced by his leaning to one side with his elbow on the table and his head on his hand. However, he answered many items correctly indicating that he was attending to the task. He demonstrated no difficulty sitting in his chair, impulsivity or difficulty concentrating. No disorders of thought were noted in this meeting.

(AR 466-67).

Testing conducted by Dr. Mascoop revealed a visual motor development delay; below average reading ability; average vocabulary and spelling; and above-average verbal comprehension. (AR 471). Dr. Mascoop noted that M.C.J. "did not demonstrate impulsivity or aggression in this evaluation most likely because this evaluation was a time-limited, highly

7

structured, one-to-one situation in which he had ongoing access to feedback." (Id.). Dr. Mascoop diagnosed M.C.J. with "Oppositional Defiant Disorder, based on records and interview with his mother," "Post Traumatic Stress Disorder, provisional diagnosis," "Attention Deficit/Hyperactivity Disorder, combined type, based on records," and "Developmental Coordination Disorder." (AR 471-72). She stated that M.C.J. "meets the SSA criteria for Attention Deficit Hyperactivity Disorder based on information contained in his mental health records from January through September 2010 and on information provided by his mother." (AR 472). She found that he demonstrates separation anxiety, irritability, aggresive behaviors, excessively passive behaviors and regressive behaviors which do not meet an SSA diagnosis but which do result in impaired functioning. (AR 472). Dr. Mascoop opined that M.C.J's symptoms in combination had resulted in "marked impairment" in social functioning, concentration, persistence and pace, and personal care. (Id.).

In December 2010, Lionel Lyon, Psy.D., a school psychologist, evaluated M.C.J. at Johnson's request. (AR 482-84, 488). Dr. Lyon described M.C.J. as a "very likable, pleasant, hard working, verbal young man. There is a certain amount of energy that is refreshing. He can be serious, as well as playful. I thought that his speech and language were excellent. [M.C.J.] was able to attend and focus very well." (AR 482). Dr. Lyon reported that M.C.J. scored "within the average range of intellectual ability" on intellectual testing. (AR 483). On "emotional screening," Dr. Lyon opined that M.C.J. had "fine motor difficulties" based on drawings he completed during testing. (AR 484). However, Dr. Lyon noted that there were no other emotional challenges. (AR 488). Specifically, he recounted that M.C.J. "was able to tell stories in a lively manner, with a beginning, a middle, and an ending. He spoke about people

having fun, parents interacting in a positive manner with children, and children enjoying having books read to them." (AR 488). He noted that M.C.J. should be carefully monitored as a result of a low score in the coding sub-test. (AR 488).

Also in December 2010, at Johnson's request, M.C.J. underwent an occupational therapy evaluation with Kimberly Hudd, M.S.Ed. (AR 487, 489-91). Ms. Hudd reported that M.C.J. "was able to maintain focus and attention on a one-to-one testing situation, attempted all tasks presented to him, and followed directions well. He would ask questions appropriately if he needed clarification of verbal directions and he was motivated to complete testing items to the best of his ability." (AR 491). Based on her testing, Ms. Hudd concluded that "skilled occupational therapy services are not recommended for [M.C.J.] to access the kindergarten curriculum." (AR 490). She recommended a follow-up evaluation in three to six months. (AR 490).

Representatives from the Revere Public School System reviewed the reports of Dr. Lyon and Ms. Hudd at a Special Education Team Meeting with Johnson in January 2011. (AR 482, 485-86). Following the meeting, the school system denied Johnson's request for special education services based on a "finding of no eligibility." (AR 485).

D.  Hearing Testimony

Johnson testified that M.C.J. had been experiencing violent nightmares since 2008, and that he would usually wet the bed during the nightmares. (AR 36, 40-41). She testified that M.C.J. had difficulty cleaning and dressing himself, and brushing his teeth. (AR 37-39). She also testified that M.C.J. had temper tantrums in which he hit her and had threatened to harm or kill himself. (AR 41-42). Johnson indicated that M.C.J. was passive around other children and

9

preferred to play by himself. (AR 42-43).

## III. DISCUSSION

### A. Disability Standard And The ALJ's Decision

Under the Social Security Act (the "Act"), an individual under the age of eighteen is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner has established a three-step protocol for determining whether a child under age eighteen is disabled. See Beliveau v. Apfel, 154 F. Supp. 2d 89, 93 (D. Mass. 2001) (citing 20 C.F.R. § 416.924). First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If not, the ALJ must determine whether the child has an impairment (or combination of impairments) that is "severe." 20 C.F.R. § 416.924(c). Third, if so, the ALJ must determine whether the impairment meets, medically equals, or functionally equals an impairment listed in the "Listing of Impairments" from Appendix 1 of Subpart P of the Commissioner's regulations. 20 C.F.R. § 416.924(d). If the child's impairment does not meet, medically equal, or functionally equal a "listed" impairment, the child will be deemed not disabled. Id.

An impairment medically equals a listing if "it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). In order to "functionally equal the listings," a child's impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain . . ." 20 C.F.R. § 416.926a(a). An

impairment results in a "marked" limitation when it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities[,]" and results in an "extreme" limitation when it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i), (3)(i). There are six domains of functioning, which consist of "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

At step one, the ALJ found that M.C.J. had not engaged in any substantial gainful activity since November 20, 2008, the application date. (AR 10). At step two, the ALJ found that M.C.J. had severe impairments of reactive attachment disorder and post traumatic stress disorder. (AR 10). At step three, the ALJ determined that M.C.J. did not have an impairment or combination of impairments that meets or medically equals Listing 112.06 or any of the other listed impairments contained in 20 C.F.R. Pt. 404, Subpart P, App. 1. (AR 11-12). With regard to functional equivalency, the ALJ found that M.C.J. had no limitations in (1) acquiring and using information and (2) health and physical well being. (AR 15, 19). He also found that M.C.J. had "less than marked" limitations in (1) attending and completing tasks, (2) interacting and relating with others, and (3) moving about and manipulating objects. (AR 16-18). Finally, the ALJ found that M.C.J. had a "marked" limitation in caring for himself. (AR 19). Absent "marked" limitations in two domains or "extreme" limitations in one domain, the ALJ concluded that M.C.J. was not disabled. (AR 20).

B.      Plaintiff's Challenge To The ALJ's Decision

Johnson argues that the ALJ erred in finding M.C.J. not disabled because (1) he selectively summarized the evidence to support his conclusion of no disability (Johnson Br. at 12-15);[5] (2) he made an improper factual inference based on M.C.J.'s lack of medication and diagnosis (Johnson Br. at 15-17); and (3) he correctly found a marked limitation in the domain of "caring for yourself," but failed to apply the same analysis to the domain of "interacting and relating with others" (Johnson Br. at 17-18). Johnson also argues that the case should be remanded for the ALJ to consider new and material evidence. This Court disagrees.

*1.     The ALJ Properly Evaluated The Medical Evidence
        And Properly Explained His Findings*

First, Johnson argues that the ALJ selectively summarized the evidence of record to support his finding of no disability. (Johnson Br. at 12-15). Johnson contends that in reviewing the evidence, the ALJ chose to highlight that part of the record which supported his findings and ignored the contradictory evidence. More specifically, Johnson argues that the ALJ selectively chose evidence to discredit the opinion of Dr. Mascoop. (Johnson Br. at 13). Johnson also faults the ALJ for not adopting Dr. Gurbani's opinion that M.C.J. had a "marked" limitation in the domain of interacting and relating with others, while at the same time giving substantial weight to Dr. Gurbani's conclusion that M.C.J.'s impairment did not functionally equal the Listings. (Johnson Br. at 15). This Court finds this argument unpersuasive.

"There is no requirement that an ALJ discuss every bit of evidence in the record when

---

[5] "Johnson Br. __" refers to Plaintiff's Memorandum in Support of Motion to Reverse or Remand the Decision of the Commissioner of the Social Security Administration (Docket No. 16).

12

penning his decision." Miller v. Astrue, No. 2009-12018-RBC, 2011 WL 2462473, at *11 (D. Mass. Jun. 16, 2011). The failure to mention a particular record does not evince a failure to consider it. To the contrary, the presumption is "that the ALJ has considered all of the evidence before him." Miller, 2011 WL 2462473 at *11. Moreover, the applicable standard of review bears repetition: "It is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the Secretary, not the courts." Ortiz, 955 F.2d at 769 (citations omitted).

Here, not only did the ALJ recognize the evidence before him, but he also more than adequately explained his reasons for giving some of that evidence less weight. For example, the ALJ gave greater weight to the opinions of Dr. Speiser because he was "[t]he provider that had the most extensive and consistent contact with [M.C.J.] subsequent to the alleged onset date." (AR 10). On the other hand, he gave little weight to Dr. Mascoop's opinion that M.C.J. suffers from "Listing level ADHD" because her opinion was inconsistent with her own findings on objective testing and because, by her own admission, Dr. Mascoop based her opinion on her review of M.C.J.'s records and Johnson's subjective allegations. (AR 13-14, 472). Indeed, Dr. Mascoop stated, even though she had met with M.C.J., that M.C.J. "meets the SSA criteria for [ADHD] based on information contained in his mental health records from January through September 2010 and on information provided by his mother." (AR 472).

In addition, as the ALJ appropriately determined, the mental health records cited by Dr. Mascoop do not establish that M.C.J. meets the listing for ADHD. (AR 13-14). To satisfy Listing 112.11, a claimant must establish: (A) medically documented findings of marked inattention, marked impulsiveness, and marked, hyperactivity, and (B) marked impairment in at

13

least two of the following areas: cognitive/communicative functioning; social functioning; or concentration, persistence, or pace. See 20 C.F.R. Part 404, Subpt. P., App. 1 § 112.11, ADHD. A "marked" impairment exists where the impairment "interferes seriously" with the child's ability to function . . . independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Part 404, Subpt. P, App. 1 § 112.00(C).

As the ALJ noted, "in spite of [M.C.J.'s] extensive history of counseling," none of the medical records upon which Dr. Mascoop purportedly relied contained a definitive diagnosis of ADHD or prescription for ADHD medication, let alone findings of such severity as to meet Listing 112.11. (AR 14, 253-317, 387-465). Although Johnson cites to records documenting symptoms of ADHD (Johnson Br. at 14, n. 10), the regulations require objective findings. See 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). In any event, the symptoms cited by Johnson do not establish the marked-level of limitation required to meet Listing 112.11. See Sitar v. Schweiker, 671 F.2d 19, 20-21 (1st Cir. 1982); Monteiro v. Apfel, 153 F. Supp. 2d 39, 44 (D. Mass. 2001) ("The mere presence of an impairment does not entitle a plaintiff to disability benefits . . . Rather, the evidence must demonstrate that the impairment or combination of impairments produces functional limitations which are either equivalent to one of certain impairments or [preclude the claimant from working].").

Finally, Johnson faults the ALJ for not adopting Dr. Gurbani's opinion that M.C.J. had a "marked" limitation in the domain of interacting and relating with others, while at the same time giving "substantial weight" to Dr. Gurbani's conclusion that M.C.J. does not functionally equal

14

the Listings. (Johnson Br. at 15). However, the Court notes that the ALJ is entitled "to piece together the relevant medical facts from the findings and opinions of multiple physicians;" he need not rely on the opinion of "some super-evaluator, a single physician who gives the factfinder an overview of the entire case" in assessing whether the claimant is disabled. See Evangelista, 826 F.2d at 144.

Indeed, the Code of Federal Regulations differentiates between medical opinions and ultimate findings. The regulations state that the Commissioner has "final responsibility" for deciding the issues of whether a claimant's impairments meet the requirements in the Listings, the residual functional capacity, or the application of vocational factors. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (citations omitted). The regulations specifically state that the Commissioner "will not give any special significance tot he source of an opinion" on these particular issues. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3). It is, therefore, the responsibility of the ALJ to consider the record evidence as a whole, and to decide which evidence is reliable and which is less so. See Zucco v. Astrue, No. 11-300003-GAO, 2012 U.S. Dist. LEXIS 45609, at *11-12 (D. Mass. Mar. 30, 2012). A court may not substitute its own judgment for the ALJ's simply on a different assessment. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

The ALJ relied on other substantial evidence of record in finding that M.C.J. had less than marked limitation in the domain of interacting and relating with others. (AR 16-17). As the ALJ noted, Dr. Speiser's treatment notes show that M.C.J. was generally able to recognize behavioral cues from others and convey respect for adults. (AR 17, 255, 257, 259, 261, 265, 267, 273, 278, 280, 291, 293). M.C.J. generally "responded well" to signs from Dr. Speiser to

15

listen, maintain eye contact, and stop talking. (AR 17, 255, 257, 259, 261, 265, 267, 273, 278, 280, 291, 293). Although M.C.J. enjoyed his play therapy sessions with Dr. Speiser, he generally was able to end the sessions in a composed and cooperative manner. (AR 17, 255, 257, 259, 263, 265, 267, 278). In addition, through counseling, M.C.J. was "better able to express his thoughts and feelings." (AR 13, 406). Finally, the ALJ indicated that he also considered the opinion of the second reviewing State agency physician, Dr. Byrnes, who opined that M.C.J. had a less than marked limitation in interacting and relating with others. (AR 12, 320).

    2.    *The ALJ Properly Considered M.C.J.'s Course Of Treatment In Making His Credibility Findings*

"Where the facts permit diverse inferences, we will affirm the Secretary so long as the inferences drawn are supported by the evidence." Baez Velez v. Sec'y of Health and Human Servs., 993 F.2d 1530, 1993 WL 177139, at *7 (1st Cir. 1993) (unpublished opinion). Here, Johnson argues that the ALJ erred by considering M.C.J.'s course of treatment as a factor in assessing the credibility of Johnson's allegations of disability. Johnson states that the reason she discontinued therapy was because M.C.J.'s therapist had left the practice and the changing of therapists exacerbated his reactive attachment disorder. (Johnson Br. at 17). However, the record shows that M.C.J. was cooperative and got along with his various treatment providers. (AR 16, 255-74, 278-81, 286-87, 291-301, 435-65, 467, 482). As the responsibility for drawing inferences from the record evidence belongs to the ALJ, there is no error.[6]

---

[6] The Court notes that, despite evidence to the contrary, the ALJ also found credible Johnson's testimony regarding M.C.J.'s difficulty with dressing, enuresis, and encopresis in finding a marked limitation in age-appropriate personal functioning. (AR 11).

3. *New Evidence Submitted By Johnson To This Court Does Not Justify Remand Under Sentence Six Of 42 U.S.C. § 405(g)*

Finally, Johnson argues that the Court should exercise its authority under sentence six of 42 U.S.C. § 405(g) to remand the case to the Commissioner for consideration of additional evidence. Sentence six of 42 U.S.C. § 405(g) provides that the Court "may at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and there is good cause for failure to incorporate such evidence in a prior proceeding." Id. To be material, the evidence must be "both relevant to the claimant's condition during the time period for which benefits were denied and probative." Beliveau, 154 F. Supp. 2d at 94 (quoting Tirado v. Bowen, 842 F.2d 595, 597 (2nd Cir. 1988)). The concept of materiality requires a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Id. Furthermore,

> an implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previous non-disabling condition.

Id. (quoting Szubak v. Sec'y of Health and Human Servs., 745 F.2d 831, 833 (3rd Cir. 1984)).

Here, the ALJ's decision denied benefits from November 24, 2008 through February 16, 2011. The additional evidence submitted by the Plaintiff is not relevant to that time period. Johnson submitted treatment notes from Massachusetts General Hospital for the period from June 2, 2011 through December 29, 2011. (Docket No. 16-1). In addition, Johnson submitted a notice from the Revere Public School District, dated January 24, 2012, denying a request for an individualized education plan ("IEP") for M.C.J. (Docket No. 16-2).

The new evidence is not material because it does not pertain to the relevant time period

17

before the ALJ: November 24, 2008 (the date of the application) through February 16, 2011 (the date of the ALJ's decision). Indeed, the new evidence does not contain any retrospective assessments of M.C.J.'s level of functioning during the relevant time period. Rather, the new records suggest an exacerbation of M.C.J.'s condition after the relevant time period. Moreover, the notice from the Revere Public School District would likely not alter the ALJ's decision as it represents a *denial* of Johnson's request for an IEP for M.C.J. (Docket No. 16-2). Accordingly, the new evidence is not material and does not justify remand under sentence six of 42 U.S.C. § 405(g).[7]

## IV. CONCLUSION

The ALJ wrote a thorough decision addressing and discussing the key issues in the case with specific explanations of the evidence that he both credited and discounted. His decision is supported by substantial evidence in the record and should be affirmed. Accordingly, this Court recommends that the District Court deny the Plaintiff's motion to reverse or remand the Commissioner's decision and grant the Commissioner's motion to affirm its decision.

## V. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such

---

[7] To the extent that Johnson believes that new evidence establishes a disability after the date of the ALJ's decision, she may file a new application on M.C.J's behalf. See Brown ex rel. Brown v. Chater, 932 F. Supp. 71, 75 (S.D.N.Y. 1996).

18

objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

                                            /s/ Jennifer C. Boal
                                            JENNIFER C. BOAL
                                            United States Magistrate Judge